Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS CONSOLI, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SCICLONE PHARMACEUTICALS, INC., FRIEDHELM BLOBEL, JON S. SAXE, NANCY T. CHANG, RICHARD J. HAWKINS, GREGG A. LAPOINTE, and SIMON LI,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Louis Consoli ("Plaintiff"), individually and on behalf all others similarly situated, by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of the public stockholders of SciClone Pharmaceuticals, Inc. ("SciClone" or the "Company") against SciClone and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which SciClone will be acquired by GL Capital Management GP Limited ("GL Capital"), Bank of China Group Investment Limited ("BOCGI"), CDH Investments, Ascendent Capital Partners ("Ascendent"), and Boying Investment Limited ("Boying" and collectively with GL Capital, BOCGI, CDH Investments, and Ascendent, the "Buyer Consortium") through the Buyer Consortium's affiliate Silver Biotech Investment Limited ("Holdco") and Holdco's wholly-owned subsidiary Silver Delaware Investment Limited ("Merger Sub") (the "Proposed Transaction").

2.      On June 8, 2017, SciClone issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell SciClone to the Buyer Consortium.  On August 10, 2017, the Company issued a press release announcing the August 6, 2017 expiration of its "go-shop" period.  Under the terms of the Merger Agreement, the Buyer Consortium will acquire all outstanding shares of SciClone for $11.18 in cash per SciClone common share (the "Merger Consideration").  The Proposed Transaction is valued at approximately $605 million.

3.      On August 2, 2017, SciClone filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy") with the SEC.  The Proxy, which recommends that SciClone stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things, (i) potential conflicts of interest faced by SciClone insiders; (ii) the Company's

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

financial projections, which were prepared by Company management and relied upon by the Company's financial advisor, Lazard Frères & Co., LLC ("Lazard"), in support of its fairness opinion; (iii) the inputs and assumptions underlying Lazard's financial analyses; (iv) Lazard's potential conflicts of interest; and (v) the go-shop period.   The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SciClone stockholders need such material information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

4.      In short, unless remedied, SciClone's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.   SciClone is incorporated in Delaware and is headquartered in this District.   Moreover, each of the Individual

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1  Defendants, as Company officers or directors, either resides in this District or has extensive contacts
2  within this District.

3  <strong><u>THE PARTIES</u></strong>

4      8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of
5  SciClone.

6      9.     Defendant SciClone is a Delaware corporation with its principal executive offices
7
8  located at 950 Tower Lane, Suite 900, Foster City, California 94404.  The Company is a China-
9  focused specialty pharmaceutical company with a substantial commercial business and a product
10 portfolio of therapies for oncology, infectious diseases and cardiovascular disorders.  SciClone's
11 common stock is traded on the NASDAQ Stock Market LLC under the ticker symbol "SCLN."

12     10.    Defendant Friedhelm Blobel ("Blobel") has been President, Chief Executive Officer
13 ("CEO"), and a director of the Company since June 2006.

14     11.    Defendant Jon S. Saxe ("Saxe") has been Chairman of the Board since July 2009 and
15 a director of the Company since August 2000.
16

17     12.    Defendant Nancy T. Chang ("Chang") has been a director of the Company since
18 September 2013.

19     13.    Defendant Richard J. Hawkins ("Hawkins") has been a director of the Company
20 since October 2004.

21     14.    Defendant Gregg A. Lapointe ("Lapointe") has been a director of the Company since
22 March 2009.
23

24     15.    Defendant Simon Li ("Li") has been a director of the Company since January 2013.

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

16.     Defendants Blobel, Saxe, Chang, Hawkins, Lapointe and Li are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17.     GL Capital is a Greater China healthcare-focused investment management group.

18.     BOCGI is the principal direct investment platform of Bank of China.

19.     CDH Investments is one of the largest alternative asset management institutions focused on China.

20.     Ascendent is a private equity investment management firm focused on Greater China-related investment opportunities.

21.     Boying is a wholly-owned limited company of Mr. Weihang Zhu.

22.     Holdco is a company organized under the laws of the Cayman Islands and affiliated with the Buyer Consortium.

23.     Merger Sub is a Delaware corporation and wholly-owned subsidiary of Holdco.

**CLASS ACTION ALLEGATIONS**

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own SciClone common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

26.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of July

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

25, 2017, there were 52,191,854 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by SciClone or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

27.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

28.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

30.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUBSTANTIVE ALLEGATIONS**

**Company Background**

31.     SciClone is a United States-headquartered, China-focused specialty pharmaceutical company with a product portfolio of therapies for oncology, infectious diseases and cardiovascular disorders. SciClone operates in two segments: 1) China; and 2) the rest of the world.  The Company is focused on continuing to grow revenue with its lead product, ZADAXIN (thymalfasin). ZADAXIN is approved in over 30 countries and may be used for the treatment of HBV, HCV, and certain cancers, and as an immune system enhancer.  In China, thymalfasin is included in the treatment guidelines issued by the Ministry of Health for liver cancer, as well as guidelines for treatment of chronic HBV and invasive fungal infections of critically ill patients.  SciClone's sales force is focused on increasing sales to China's largest and mid-size hospitals.  The Company is seeking to expand the indications for which ZADAXIN can be used, including sepsis, and on September 26, 2016, the Company announced the first patient treated in a clinical trial for sepsis using ZADAXIN in China.

32.     Indeed, SciClone's efforts to grow its revenue and profitability have proven successful.  On May 10, 2017, the Company announced its first quarter of 2017 financial results. For the quarter, SciClone reported revenues of $42.9 million, compared to $36.5 million in the first quarter of 2016.  ZADAXIN revenues were $39.5 million, compared to $33.6 million in the first quarter of 2016.  GAAP net income was $14.6 million, or $0.28 per share, compared to GAAP net income of $7.9 million, or $0.16 per share in the first quarter of 2016.   Defendant Blobel commented on the quarter's positive financial results, stating:

> We delivered a strong first quarter performance, in line with our expectations, and
> reflecting the continued demand for, and growth potential of, ZADAXIN and our
> core business. ZADAXIN's competitive position remains strong, with continued
> volume growth despite generic competition. ZADAXIN's double-digit volume

- 7 -

growth rate continued this quarter, underscoring its strength as the leading branded thymalfasin, with a 17% volume share and more than a 40% value share.

33.     On August 9, 2017, the Company announced its financial results for the second quarter ended June 30, 2017.   For the quarter, SciClone reported revenues of $44.5 million, compared to $39.0 million for the second quarter of 2016.  ZADAXIN revenues were $41.6 million, compared to $36.5 million in the second quarter of 2016.  GAAP net income was $12.2 million, or $0.23 per share, compared to $6.3 million, or $0.12 per share in the second quarter of 2016.

**The Sale Process**

34.     In September 2015, the Board authorized the Company to initiate a strategic process, and in October 2015, Lazard contacted 99 potential bidders, including GL Capital.  Over the next few months, the Company engaged in discussions with a buyer consortium led by GL Capital and a financial buyer, referred to in the Proxy as "Party A," but both parties determined not to proceed with a transaction at that time.

35.     In September 2016, Lazard met with the CEO of a pharmaceutical company based in China, referred to in the Proxy as "Party B," that had previously participated in the strategic process.  Party B provided a preliminary indication of interest of $11.00 per share, and on October 2, 2016, Party B submitted a revised indication of interest of $12.60 per share but subsequently informed Lazard that it was no longer interested in pursuing a transaction with the Company.

36.     On November 12, 2016, Jeffrey Li, the CEO of GL Capital Group, informed defendant Blobel that a buyer consortium led by GL Capital would be making a proposal to acquire the Company for $11.18 per share.  GL Capital publicly disclosed this proposal on November 14, 2016.

37.     Following Board meetings throughout November 2016, the Board instructed Lazard to pursue further discussions with the buyer consortium led by GL Capital.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

38.     On December 13, 2016, Lazard reached out to nine parties that had expressed interest in a potential strategic transaction during the previous strategic review process.

39.     On December 14, 2016, GL Capital's financial advisor contacted Lazard to orally express that GL Capital could consider increasing their offer to a "best and final" price of $11.48 per share, subject to new terms.

40.     On December 15, 2016, a Chinese investment bank emailed defendant Blobel to introduce a China-based financial buyer, referred to in the Proxy as "Party C," who was interested in the bidding process and provided an indication of interest of $12.00 per share.

41.     On January 12, 2017, defendant Blobel and Wilson Cheung, Chief Financial Officer ("CFO") of SciClone, met with Party C and invited Party C to enter into a confidentiality agreement with the Company.  Party C emailed details of its $12.00 per share proposal on February 7, 2017, but did not submit a formal proposal.

42.     On January 25, 2017, SciClone received a proposal from a buyer consortium led by a biotechnology company based in South Korea, referred to in the Proxy as "Party D," for $12.00 per share.

43.     On February 24, 2017, Party D signed a confidentiality agreement with the Company.

44.     On April 28, 2017, GL Capital sent a letter to the Company indicating its November 14, 2016 proposal of $11.18 per share represented its "best and final" offer.

45.     From May 26, 2017 through June 7, 2017, the parties negotiated the terms of the merger agreement and related documents.

46.     On May 29, 2017, Lazard reached out to ten parties, including Party A, Party B, and Party D.

47.     On June 7, 2017, Lazard rendered its fairness opinion and the Board approved the Merger Agreement.  On June 8, 2017, the parties executed the Merger Agreement and the "go-shop" period began on June 9, 2017.

48.     On June 12, 2017, Party A joined by an investment company based in China referred to in the Proxy as "Party E" entered into a confidentiality agreement with the Company and continued its due diligence review of the Company.

49.     On June 14, 2017, Party C submitting a proposal to acquire the Company for $12.00 per share.  Party C subsequently entered into a confidentiality agreement and continued its due diligence review of the Company.

50.     On August 10, 2017, SciClone issued a press release announcing the expiration on August 6, 2017 of the "go-shop" period.  During the "go-shop" period, Lazard contacted 38 potential acquirers, including 28 strategic parties and 10 financial parties, and the Company received one alternative acquisition proposal.  The press release fails to disclose any details concerning this alternative acquisition proposal, including the price per share offered.

**The Proposed Transaction**

51.     On June 8, 2017, following execution of the Merger Agreement, SciClone issued a press release stating, in relevant part:

> FOSTER CITY, Calif., June 8, 2017 -- SciClone Pharmaceuticals, Inc. (NASDAQ: SCLN) (the "Company" or "SciClone") and a consortium consisting of entities affiliated with GL Capital Management GP Limited ("GL Capital"), Bank of China Group Investment Limited ("BOCGI"), CDH Investments, Ascendent Capital Partners and Boying (collectively, the "Buyer Consortium") today announced that they have entered into a definitive merger agreement under which the Buyer Consortium will acquire all the outstanding shares of SciClone for $11.18 per share in cash. The transaction will be funded by the Buyer Consortium through a combination of equity financing to be provided by the Buyer Consortium and debt financing, and is not subject to a financing condition. The transaction, which was unanimously approved by SciClone's Board, values the Company at approximately $605 million, on a fully diluted basis, and represents a premium of 11% over SciClone's closing stock price on June 7, 2017 and a premium of 16% over its ten-day volume-weighted average closing stock price. The transaction, which is

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

expected to close this calendar year, is subject to approval by SciClone stockholders and other customary closing conditions.

* * *

"On behalf of the Buyer Consortium, I would like to express my deep appreciation and admiration to the Board and the management of SciClone. They have done an impressive job navigating through China's complex healthcare landscape and built the Company into the solid and successful business it is today," said Jeffrey Li, founder and CEO of GL Capital. "We very much look forward to working with the Company's management and its excellent employees in the near future. With the extensive local knowledge and vast resources brought by the various members of the Buyer Consortium, we are confident the Company will have a bright and promising future for all of its customers, patients, employees, and other stakeholders."

**Insiders' Interests in the Proposed Transaction**

52.     The Buyer Consortium and SciClone insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of SciClone.

53.     Notably, it appears that certain members of Company management have secured positions for themselves following completion of the Proposed Transaction.   According to the Proxy ". . . certain members of management may continue to remain employees of the Company after the completion of the transaction. . . ."   Proxy at 42.   Additionally, in the press release announcing the Proposed Transaction, Jeffrey Li, founder and CEO of GL Capital, states, "We very much look forward to working with the Company's management and its excellent employees in the near future."

54.     Further, SciClone insiders stand to reap substantial financial benefits for securing the deal with the Buyer Consortium.   Each vested unexercised stock option, and restricted stock unit award and performance restricted stock unit award covered by retention agreements held by the Company's directors and executive officers will be converted into the right to receive cash

- 11 -

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

payments.  The following table summarizes the cash payments the Company's executive officers and non-employee directors stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

| Name | Shares Held (#) | Shares Held ($)(1) | Number of Shares Subject to Options (#)(2) | Value of Number of Shares Subject to Options ($)(3) | Number of Shares Subject to Restricted Stock Units (#)(4) | Value of Number of Shares Subject to Restricted Stock Units ($)(5) | Number of Shares Subject to Performance-Based Restricted Stock Units (#)(6) | Value of Number of Shares Subject to Performance-Based Restricted Stock Units ($)(7) | Total ($) |
|---|---|---|---|---|---|---|---|---|---|
| Jon S. Saxe | 135,000 | $ 1,509,300 | 300,000 | $ 1,515,900 | — | $          0 | — | $          0 | $ 3,025,200 |
| Friedhelm Blobel | 122,209 | $ 1,366,297 | 1,172,610 | $ 5,460,191 | 135,000 | $ 1,509,300 | 225,000 | $ 2,515,500 | $ 10,851,287 |
| Nancy T. Chang | 70,000 | $   782,600 | 90,000 | $   69,300 | — | $          0 | — | $          0 | $   851,900 |
| Richard J. Hawkins | 24,363 | $   272,378 | 210,000 | $   719,400 | — | $          0 | — | $          0 | $   991,778 |
| Gregg A. Lapointe | — | $          0 | 295,000 | $ 1,506,250 | — | $          0 | — | $          0 | $ 1,506,250 |
| Simon Li | — | $          0 | 182,500 | $   643,825 | — | $          0 | — | $          0 | $   643,825 |
| Wilson Cheung | 1,872 | $     20,929 | 286,167 | $   712,918 | 82,000 | $   916,760 | 112,500 | $ 1,257,750 | $ 2,908,357 |
| Raymond Low | 15,536 | $   173,692 | 155,000 | $   529,400 | 21,250 | $   237,575 | — | $          0 | $   940,667 |
| Carey Chern | — | $          0 | 80,000 | $   66,400 | 30,000 | $   335,400 | — | $          0 | $   401,800 |
| Hong Zhao | — | $          0 | 342,000 | $ 1,098,360 | 82,000 | $   916,760 | 112,500 | $ 1,257,750 | $ 3,272,870 |
| Xi Chen | — | $          0 | 92,833 | $   261,058 | 18,000 | $   201,240 | — | $          0 | $   462,298 |
| Min Yin | — | $          0 | 131,166 | $   403,860 | 21,750 | $   243,165 | — | $          0 | $   647,025 |
| Lan Xie | — | $          0 | 86,834 | $   261,305 | 18,000 | $   201,240 | — | $          0 | $   462,545 |
| Robert King | — | — | — | — | — | — | — | — | — |

55.    Moreover, if they are terminated in connection with the Proposed Transaction within 12 months following the merger, SciClone's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Pension/ NQDC | Perquisites/ Benefits ($)(3) | Tax Reimbursement ($) | Other ($) | Total ($)(4) |
|---|---|---|---|---|---|---|---|
| Friedhelm Blobel | $ 1,501,500 | $ 4,830,960 | — | $ 13,564.68 | — | — | $ 6,346,025 |
| Wilson Cheung | $   517,514 | $ 2,601,196 | — | $ 18,194.40 | — | — | $ 3,136,905 |
| Hong Zhao | $ 1,068,639 | $ 2,633,233 | — | $ 27,353.09 | — | — | $ 3,729,224 |
| Lan Xie | $   354,553 | $   351,763 | — | $ 25,500.00 | — | — | $   731,816 |
| Robert King(5) | — | — | — | — | — | — | — |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Materially Incomplete Proxy**

56.     Defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to SciClone's stockholders.  The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting or appraisal decision in connection with the Proposed Transaction.

57.     Specifically, the Proxy is deficient and misleading because, *inter alia*, it omits material information about: (i) potential conflicts of interest faced by SciClone insiders; (ii) the Company's financial projections, which were prepared by Company management and relied upon by the Company's financial advisor, Lazard, in support of its fairness opinion; (iii) the inputs and assumptions underlying Lazard's financial analyses; (iv) Lazard's potential conflicts of interest; and (v) the go-shop period.  Without this material information, SciClone stockholders will be asked to make a voting or appraisal decision on the Proposed Transaction based upon materially incomplete and misleading information.

***Material Omissions Concerning Insiders' Potential Conflicts of Interest***

58.     The Proxy is actively misleading regarding employment discussions taking place during the period leading up to the execution of the Merger Agreement.

59.     The Proxy states that "no employment agreements or similar arrangements were or have been implemented in connection with discussions with the Buyer Consortium." However, the Proxy also states, that, "[i]n accordance with the merger agreement, after the effective time . . . officers of the Company immediately prior to the effective time will continue their employment as the officers of the surviving corporation."  Proxy at 66.

60.     Moreover, the continuing employment of SciClone management after the close of the Proposed Transaction appears to be a foregone conclusion. In the press release announcing the Proposed Transaction, Jeffrey Li, Founder and CEO of GL Capital, stated, "We very much look

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

forward to working with the Company's management and its excellent employees in the near future."

61.     Despite this clear public statement by Jeffrey Li, the Proxy actively misleads SciClone stockholders into believing that no discussions regarding continued employment of management took place. While formal agreements on this issue may not have been reached, it is clear that communications regarding post-close employment for SciClone management took place and that members of SciClone management will be continuing with the post-close company.

62.     The foregoing statements in the Proxy relating to the continued employment of SciClone executives are at best misleading, as there is no information as to the content, nature, timing or parties involved in discussions regarding the employment of SciClone management with the post-close company.  Moreover, given that the Buyer Consortium is comprised of various private equity and investment management buyers, rather than being a strategic purchaser, the likelihood is very high that the Buyer Consortium pursued communications regarding its intention to retain management, as similarly situated private equity and investment management buyers often do in such transactions.

63.     This information is particularly material with respect to defendant Blobel, as he was intimately involved in the negotiations with the Buyer Consortium throughout the sale process.  For example, defendant Blobel met with Jeffrey Li for a "routine" shareholder update just one month prior to GL Capital submitting an "unsolicited" proposal to acquire SciClone. Any communications — even one-sided written indications in proposals or other written communications — concerning post-merger employment between the Buyer Consortium or its affiliates and defendant Blobel, or any other SciClone officers, directors, or employees, during the sale process, would be material to a stockholder's decision as to whether to vote in favor of the Proposed Transaction or seek appraisal. Such communications give rise to substantial undisclosed conflicts of interests.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

64.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to SciClone's stockholders. This information is necessary for SciClone's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

65.     The omission of this information renders the statements in the "Employment Arrangements Following the Merger" and "Background of Merger" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

### Material Omissions Concerning Lazard's Financial Analyses

66.     The Proxy describes Lazard's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, SciClone's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to SciClone's stockholders.

67.     For example, with respect to Lazard's *Sum-of-the-Parts Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the unlevered free cash flow figures for each of the products and product candidates utilized by Lazard in the analysis; (ii) unallocated G&A expenses; and (iii) Lazard's estimated cash balance as of July 30, 2017.

68.     With respect to Lazard's *2018 Selected Companies Analysis*, the Proxy fails to disclose the individual multiples and financial benchmarking metrics for the companies observed by

Lazard in its analysis.  The disclosure of such multiples and metrics is necessary because they are a crucial element of this analyses, as the analysis is based on comparison and relative valuation. Without such disclosure, stockholders are unable to determine whether the companies observed and the range of multiples selected by Lazard based on the comparable companies were appropriate.

69.     Failure to disclose this information renders the statements in the "Opinion of the Company's Financial Advisor" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning SciClone's Financial Projections***

70.     The Proxy fails to disclose material information concerning the Company's financial projections relied upon by Lazard in preparing its fairness opinion.

For example, the Proxy sets forth:

In connection with rendering the Lazard opinion described above and performing its related financial analyses, Lazard:

\* \* \*

[R]eviewed various financial forecasts and other data provided to us by Company relating to the business of Company[.]

Proxy at 47-48.  The Proxy also sets forth:

***Sum-of-the-Parts Discounted Cash Flow Analysis***

Based upon the financial forecasts dated as of May 21, 2017 provided by management of the Company, Lazard performed a sum-of-the-parts valuation analysis using a discounted cash flow analysis to determine an illustrative net present value per share of common stock as of June 7, 2017, based on the aggregate of the illustrative net present values calculated by Lazard for each of the Company's products and product candidates, estimated future net cash and its estimated general and administrative expenses. For purposes of this analysis, Lazard applied discount rates ranging from 9.5% to 11.5%, reflecting an estimate of the Company's weighted average cost of capital, to (i) the estimated unlevered free cash flows to be generated by each of the Company's products and product candidates, estimated future net cash and the estimated future general and administrative expenses, which we refer to herein as unallocated G&A, to be incurred by the Company, in each case from June 30, 2017 through December 31 of the terminal year; and (ii) the terminal value

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

of each of the Company's products and product candidates, estimated future net cash and unallocated G&A as of December 31 of the applicable terminal year (which differed depending on the product or product candidate described below).

*Id.* at 49.

71.     The Proxy, however, fails to disclose (i) the estimated unlevered free cash flows to be generated by each of the Company's products and product candidates, estimated future net cash and the estimated future general and administrative expenses, to be incurred by the Company, in each case from June 30, 2017 through December 31 of the terminal year; and (ii) the terminal value of each of the Company's products and product candidates, estimated future net cash and unallocated G&A as of December 31 of the applicable terminal year.

72.     Failure to disclose this information renders the statements in the "Certain Financial Projections" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Lazard's Potential Conflicts of Interest***

73.     The Proxy fails to disclose material information related to Lazard's potential conflicts of interest.  The Proxy provides:

> In connection with Lazard's services as financial advisor to the Company with respect to the merger, the Company agreed to pay Lazard the following fees: (i) $1 million, which was paid following the rendering of Lazard's opinion and (ii) approximately $8 million, to be paid upon the completion of the merger.

> Lazard, as part of its investment banking business, is continually engaged in the valuation of businesses and their securities in connection with mergers and acquisitions, negotiated underwritings, secondary distributions of listed and unlisted securities, private placements, leveraged buyouts, and valuations for estate, corporate and other purposes. In addition, in the ordinary course, Lazard and its respective affiliates and employees may trade securities of the Company, Holdco and certain of their respective affiliates for their own accounts and for the accounts of their customers, may at any time hold a long or short position in such securities, and may also trade and hold securities on behalf of the Company, Holdco and certain of their respective affiliates. The issuance of Lazard's opinion was approved by the opinion committee of Lazard.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Proxy at 58.  However, the Proxy fails to disclose whether Lazard has performed any services for the Company or the Buyer Consortium in the two years prior to its fairness opinion, and any fees received for providing these services.

74.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

75.     The omission of this information renders the statements in the "Background of the Merger" and "Opinion of the Company's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Go-shop Period***

76.     The Proxy omits material information relating to the go-shop period.     The Company's August 10, 2017 press release states:

> Under the terms of the Merger Agreement, the Company and its advisors were permitted to actively solicit and negotiate alternative acquisition proposals from third parties during a "go-shop" period. During the "go-shop" period, representatives of Lazard Frères & Co. LLC ("Lazard"), financial advisor to the Company, under took a broad solicitation effort, contacting 38 potential acquirers, including 28 strategic parties and 10 financial parties that the Company and Lazard believed might be interested in a possible alternative transaction to the merger with the Buyer Consortium. As a result of these efforts, Company received one alternative acquisition proposal.
>
> After consulting with its financial and legal advisors, the Company's Board of Directors has unanimously determined that the alternative transaction proposal would not reasonably be expected to result in a "Superior Proposal" (as defined in the Merger Agreement) because, among other considerations, the proposal was subject to significant uncertainties compared to the Merger Agreement, including with respect to the third party's ability to secure debt and equity financing, and the inclusion of receipt of regulatory approvals from multiple governmental authorities in China as closing conditions to the proposed merger agreement in consideration of the existing regulatory environment in China relating to outbound investments. Consequently, the Company has ceased and terminated any existing discussion and negotiation with the party that submitted the alternative

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

77.     Critically, the Proxy fails to disclose: (i) whether the party who made the alternative acquisition proposal was Party C who submitted a preliminary non-binding proposal to acquire the Company for $12.00 per share on June 14, 2017; (ii) the price terms attached to the alternative acquisition proposal; and (iii) the details of communications with Party A, Party E and Party C during the go-shop period, each of which was continuing with its due diligence review of the Company as of the date of the filing of the Proxy.

78.     The identity of the party who submitted the alternative acquisition proposal and whether this party is Party C is especially material due to the fact that Party C submitted a preliminary non-binding proposal with an offer price 7.3% higher than the Merger Consideration. Additionally, the price terms of the alternative acquisition proposal is probably the most important piece of information a SciClone stockholder, who will be cashed out in the Proposed Transaction, can be armed with.  Without this information, SciClone stockholders are left in the dark as to whether a bidder has proposed to pay more for the Company, thereby not allowing SciClone stockholders to make an informed voting or appraisal decision.

79.     The omission of this information renders the statements in the "Background of the Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

80.     Defendants' failure to provide SciClone stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

81.     Plaintiff repeats all previous allegations as if set forth in full.

82.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

83.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

84.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.   The Proxy misrepresented and/or omitted material facts, including material information about the sale process for the Company and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

85.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

86.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

87.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

88.     Plaintiff repeats all previous allegations as if set forth in full.

89.     The Individual Defendants acted as controlling persons of SciClone within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers or directors of SciClone and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

90.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

91.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

92.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

93.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

94.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of SciClone, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to SciClone stockholders;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 16, 2017

**WEISSLAW LLP**
Joel E. Elkins

By:

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
          -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010


*Attorneys for Plaintiff and*
*the Proposed Class*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS